IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UFP Eastern Division, Inc., *f/k/a Universal Forest Products Eastern Division, Inc.*, <br><br>Plaintiff, <br><br>v. <br><br>Selective Insurance Company of South Carolina, <br><br>Defendant. | Civil Action No. 4:15-2801-RMG <br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendant UFP Eastern Division, Inc.'s motion for summary judgment and Plaintiff Selective Insurance Company of South Carolina's motion for summary judgment. For the reasons set forth below, the Court denies both motions.

I. **Background**

UPF, a Michigan corporation, was a framing contractor to Beazer Homes for the development of 59 single- and multi-story residential buildings in Horry County, South Carolina (the "Park West" project). UFP used several subcontractors on Park West, including VF Builders, which performed the framing scope of work on 13 of the 59 buildings[1] and which was insured by Defendant Selective and two other insurers, Nationwide Mutual and Frankenmuth Mutual. UFP required VF Builders to include UFP as an additional insured on its commercial general liability insurance policy. (Dkt. No. 34-2 § 3.5.)

---

[1] The record is equivocal about whether VF Builders framed 13 or 14 buildings. UFP has represented it was 13 buildings when responding to Selective's motion for summary judgment. (*E.g.*, Dkt. No. 72 at 5.) For purposes of the present motion only, the Court treats that as a concession that VF Builders worked on 13 and not 14 buildings.

After the completion of Park West, the Park West Horizontal Property Regime and Park West Homeowners' Association of Myrtle Beach, Inc. (the "Owners") claimed that damaging water intrusion into the buildings had occurred and that the framing scope of work contributed to that water intrusion. The Owners filed suit against Beazer on January 31, 2013, Beazer in turn filed a third-party complaint against its subcontractors, including UFP, and UFP in turn asserted claims against its subcontractors, including VF Builders (the "Underlying Litigation"). (Dkt. Nos. 34-2 & 34-3.) UFP claims it tendered its defense to Selective on October 1, 2014. (Dkt. Nos. 48 ¶ 12; 72 at 2–3.) Selective denies receiving UFP's tender before April 29, 2015.[2]

On April 17, 2015, UFP filed the present action in state court against its three insurers. (Dkt. No. 1-1 at 1.) UFP asserts two causes of action. The first cause of action seeks both a declaratory judgment regarding Selective's duty of defense in the underlying litigation and compensatory damages for Selective's alleged breach of that duty of defense. The second cause of action alleges that Selective failed to process UFP's claims in good faith. On June 23, 2015—after the complaint in this action was filed but before it was served—a settlement was reached in the Underlying Litigation.[3] VF Builder's three insurers paid $230,000 in settlement to UFP; Selective contributed $120,000 of that amount. (Dkt. No. 72-1 at 4.) The settlement was allocated

---

[2] The complaint alleges an additional tender date of August 2011, apparently referring to a letter dated August 15, 2011. (Dkt. Nos. 48 ¶ 9; 64-1 at 3.) Selective argues that letter was dated years before the Underlying Litigation was filed and that it was not addressed to or sent to Selective, and so cannot create a genuine dispute about an August 15, 2011 tender date. (Dkt. No. 64-1 at 3.) UFP does not respond to Selective's arguments regarding an August 2011 tender date and so the Court deems abandoned the allegation of an August 2011 tender date. "[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

[3] The settlement agreement is dated November 20, 2015 (Dkt. No. 72-1 at 3), but Selective has represented the agreement was reached at a mediation on June 23, 2015 and UFP has not challenged that representation (*see* Dkt. No. 64-1).

as $41,089 for construction defects and $188,911 for attorney's fees. (*Id.* at 7.) UFP released Frankenmuth from all possible claims, but specifically excluded from the settlement were UFP's claims to insurance benefits, including both defense and indemnification, under commercial general liability policies issued by Selective or Nationwide to VF Builders, and UFP's bad faith claims against Selective or Nationwide. (*Id.* at 5–7.) Also excluded were the insurers' defenses against those claims. Those excluded issues are the subject matter of the present litigation. The settlement agreement, however, does provide UFP's insurers an offset of $188,911 in this litigation. (*Id.* at 7.)

UFP's action originally named all three insurers—Selective, Nationwide, and Frankenmuth—as Defendants. (Dkt. No. 1-1). Frankenmuth was dismissed on June 29, 2015, shortly after the settlement agreement and before this action was removed from state court. (Dkt. Nos. 1-2 at 1; Dkt. No. 1-3 at 1 (removal on July 16, 2015).) Nationwide was dismissed on February 20, 2016, leaving Selective as the sole Defendant. (Dkt. No. 28.) After the complaint was amended to name the proper Selective legal entity, both parties filed renewed motions for summary judgment, which are now ripe for disposition.

## II.   **Legal Standard**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those

facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party," *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996), but it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

#### A. Defendant's motion for summary judgment

Selective presents three arguments in favor of summary judgment: 1) there is no genuine dispute that UFP tendered its defense to Selective on April 29, 2015, and that Selective met its obligation to defend UFP from that date; 2) UFP has failed to present any evidence supporting its claim for indemnity; and 3) UFP cannot present a claim for bad faith because it is not an insured, and if it could, there is no genuine dispute that UFP tendered its defense to Selective on April 29, 2015 and Selective acted in good faith from that date. At trial, UFP will bear the burden of proving its allegations. For summary judgment, Selective, as the movant, bears the burden of showing the

absence of a genuine factual dispute. *Celotex Corp.*, 477 U.S. at 323. It may do so by showing an allegation to be wholly without factual support. *Drewitt*, 999 F.2d at 778.

### 1.  *Tender dates*

Selective argues UFP tendered its defense on April 29, 2015, not October 1, 2014. Selective also argues that it met its obligation to defend UFP from that later date. To support its claim of an October 1, 2014 tender date, UFP has produced 1) the tender letter, dated October 1, 2014, addressed from Henry Grimball, a partner at the law firm of Womble Carlyle to Bob Gagnon, a claims manager with Selective; 2) an affidavit from Robin Herron, a legal secretary for Mr. Grimball at Womble Carlyle, stating that she personally transmitted the letter to Selective by mail and by email and that she received no return-to-sender error messages; and 3) a copy of the email from Ms. Herron to Mr. Gagnon, showing Mr. Gagnon's name in the "To" field and showing a PDF attachment named "Letter to John Rogers-GlennElliott-Bob Gagnon re tender of defense.PDF." (Dkt. No. 72-2.) Selective argues that evidence is insufficient to create a genuine factual dispute about whether the tender letter was sent to and received by Mr. Gagnon on October 1, 2014. The Court considers Selective's arguments concerning transmission by mail and by email below and finds each to be without merit.

Selective argues no evidence shows Mr. Gagnon actually received the October 1, 2014 tender letter by mail, because it was not sent by certified mail so there is no return receipt. (Dkt. No. 64-1 at 4.) The Court is aware of no requirement that a plaintiff must prove his insurer received his tender letter by direct evidence. The fact that a letter was both mailed and emailed, if established, would be circumstantial evidence that it was received by the intended recipient, both by mail and by email. On summary judgment, all reasonable inferences drawn for the non-movant. *HealthSouth Rehab. Hosp.*, 101 F.3d at 1008. The Court therefore finds a genuine dispute exists about whether Selective received the October 1, 2014 tender letter by mail.

Selective also argues no evidence shows the October 1, 2014 tender letter was actually sent by email or that Mr. Gagnon actually received it, citing S.C. Code § 26-6-150. Applied to email, that statute provides that an email is sent when it exits the sender's email system in a properly addressed and readable format, and that it is received when it enters the recipient's email system in a readable format. S.C. Code § 26-6-150. Selective argues UFP has failed to present evidence showing the October 1, 2014 email from Ms. Herron satisfies those statutory elements.[4] Selective's argument, however, misapprehends the statute. The statute speaks to what must be proven, not how it must be proven. For example, if an email were received into the recipient's inbox, but the recipient failed to open the email, by statute that email would be deemed received. An opposing party need not prove which inbox items someone actually looked at.

A copy of an email listing dates and recipients is evidence both that the email was sent and that it was received by its listed recipients. That is not to say that a copy of an email is sufficient to prove that the email was sent or received—one may easily draft an email without actually sending it. A sworn statement from the sender, stating that she actually sent the email and received no send-failure or similar error message, is further evidence that the email was sent and that it was received by its listed recipients. That is not to say that a copy of an email together with such an affidavit is necessarily sufficient to prove that the email was received by all listed recipients—a silent technical fault could have occurred between sending and receipt. But weighing the likelihood of an improbably silent fault under a preponderance standard is a matter for the jury, as is weighing the credibility of the affiant. So, although additional evidence showing that some other person listed the "To" or "CC" fields actually received the email likely would be irrefutable proof

---

[4] The cover email UFP produced is a text email with a PDF attachment. (Dkt. No. 72-2 at 10.) The Court finds no genuine dispute that a text email with a PDF attachment is "in a form capable of being processed" by Selective's email system.

that the email was in fact sent and compelling evidence that the other listed recipients also received the email, such evidence is not to create a genuine factual dispute about whether the email was sent and received on October 1, 2014.

Selective makes much of deposition testimony by Kelvin Causey, UFP's Rule 30(b)(6) designee, arguing that he testified that he is unaware of any evidence Selective received a October 1, 2014 tender letter, and that UFP is bound by the testimony of its Rule 30(b)(6) designee. (Dkt. Nos. 64-1 n.3; 75 at 3–4.) Selective's argument is without merit for two reasons. First, Mr. Causey's testimony can be read to mean UFP has no direct evidence that Selective received the tender letter. (*See* Dkt. No. 64-2 at 29–30 (Mr. Causey testifying that he is "not aware of—of any way of saying that it was").) Second, Mr. Causey is an operations general manager with UFP. He was designated as UFP's Rule 30(b)(6) designee because he is the person at UFP most knowledgeable about six areas of inquiry identified in Selective's deposition notice. (Dkt. No. 64-2 at 31.) A Rule 30(b)(6) designate provides "complete, binding answers" only on "noticed topics reasonably available to the corporation." *Ethox Chem., LLC v. Coca-Cola Co.*, Civ. No. 6:12-1682-TMC, 2014 WL 2719214, at *2 (D.S.C. June 16, 2014). Selective's deposition notice provides the deponent should be knowledgable about "The tender for coverage made by the Plaintiff to Selective" (Dkt. No. 64-2 at 1), but the Court does not consider Womble Carlyle's mailroom procedures to fall within that noticed area of inquiry. Moreover, exactly how outside counsel's secretary transmitted a letter to an insurance company is not "reasonably available to the corporation." *Ethox Chem., LLC*, 2014 WL 2719214, at *2.

The parties have each made factually supported but contradictory statements about UFP's date of tender. The Court therefore finds a genuine dispute of material fact exists about whether the UFP tendered its defense to Selective on October 1, 2014 or April 29, 2015.

## 2.   *Ascertainment of damages*

UFP paid $1.65 million to Beazer Homes in settlement of all framing issues at Park West, and it seeks indemnification from Selective for that portion attributable to VF Builder's work. (*See* Dkt. No. 72.)   The insurance policy in this case insures UFP only for bodily injury or property damage caused by work performed by VF Builders for UFP. (Dkt. No. 32-6 at 24.) Under South Carolina law, insurance coverage for property damage does not cover defective construction, though it may cover consequential damages to otherwise non-defective components resulting from negligent or defective construction. *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 593 (S.C. 2011). Further, the insured bears the burden of showing its claim falls within the insurance contract.[5] *Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968). So to survive summary judgment, UFP must produce evidence sufficient to create a genuine dispute about whether its claim for indemnity is a claim regarding property damage caused by VF Builder's defective work and not simply the cost of replacing VF Builder's defective work.

Selective objects that UFP has presented no evidence to support a specific allocation of damages to VF Builders. (Dkt. No. 64-1 at 7–9.) UFP responds that the $1.65 million may be allocated *pro rata* to each of the 59 Park West buildings, so that the indemnification for VF Builder's 13 buildings would be $363,000. (Dkt. No. 72 at 4.) The Court does not know whether that would be an appropriate allocation. Selective presents cogent arguments that it is not: a *pro rata* allocation assumes each of the 59 buildings had identical damages resulting from identical defects in framing, and it assumes the $1.65 million paid to Beazer was for consequential damages. (*See* Dkt. No. 75 at 4 n.3.) At trial, UFP will bear the burden of proving each building had

---

[5] UFP bears the burden to identify consequential damages within the scope of coverage. Consequential damages are not, as UFP wrongly argues, an exclusion from coverage exclusion that Selective must prove.

-8-

materially identical framing defects resulting in materially identical damages. For purposes of summary judgment, Selective has not met its burden to show that the traverse is beyond dispute.

Selective also argues it is beyond dispute that UFP cannot meet its burden because its damages witnesses, Jason Gregorie and Kelvin Causey, were able to testify only about framing deficiencies and resulting water intrusion damages throughout Park West and not about specific damages caused by specific defects in VF Builder's work on specific buildings. (*See* Dkt. No. 64-1 at 12.) They did, however, testify about damages throughout Park West that consequential water intrusion damages caused by defective framing.[6] (Dkt. No. 64-2 at 14–16.) When considering summary judgment, all inferences are drawn for the non-movant. It is possible to infer that UFP's framing subcontractors on the Park West project each performed in a materially identical manner when working on 59 materially identical buildings, resulting in materially identical consequential damages.

Selective further argues Mr. Causey's lack of knowledge of specific damages caused by specific defects in VF Builder's work must be imputed to UFP, because Mr. Causey testified as UFP's Rule 30(b)(6) designee and because damages was noticed as a deposition topic. (See Dkt. Nos. 64-3 at 1–2; 75 at 3–4.) Selective makes a strong point. UFP's Rule 30(b)(6) designee should have been able to speak to the dollar amount of the indemnity UFP seeks from Selective in this action. The Court, however, finds Mr. Causey's deposition testimony reconcilable with a *pro rata* allocation of damages. It is possible Mr. Causey did not explain how UFP would prove consequential damages at trial because UFP simply cannot do so. If so, Selective will prevail on

---

[6] The Court has not considered the expert report prepared by Derek Hodgin from the Underlying Litigation (Dkt. No. 72-3). Mr. Hodgin has not been identified as an expert in this case. It also has not considered the repair estimate from Watkins Services, Inc. (Dkt. No. 72-4), which is stamped "For settlement purposes only" and which has no identified author.

this issue at trial. But the Court does not deem that possibility so indisputable as to warrant summary judgment. And to the extent Mr. Causey may have been inadequately prepared for his Rule 30(b)(6) deposition, the Court does not view summary judgment as an appropriate sanction.

Finally, Selective's argument that it paid UFP in settlement for any consequential damages attributable to VF Builders as part of the settlement of the Underlying litigation is without merit. UFP's claim for indemnity was specifically excluded from the settlement agreement. (Dkt. No. 72-1 at 6.)

At trial, UFP must prove its claim for indemnity falls within the scope of insurance—*i.e.*, prove consequential damages resulting from work performed by VF Builders. To obtain summary judgment, however, Selective must show that it is indisputable that UFP has no provable damages within the scope of insurance. The Court finds Selective has not has met that burden.

### 3.   *Bad Faith*

UFP claims in its second cause of action that Selective has refused to pay benefits due under the insurance policy in bad faith. (Dkt. No. 48 ¶ 30.) Selective argues it is entitled to summary judgment on UFP's bad faith claim because UFP is an additional insured, not a named insured, under the insurance policy, yet South Carolina law only permits named insureds to bring bad faith actions, and so UFP cannot bring a bad faith action against. (Dkt. No. 64-1 at 13–15.) Selective also argues no evidence suggests Selective handled UFP's claim in bad faith after the April 29, 2015 tender, which Selective argues is the only possible tender date. (*Id.*) Selective's fallback argument for summary judgment on the bad faith claim fails because there is a genuine factual dispute regarding the date of tender, for the reasons discussed above, and if Selective did receive UFP's tender on October 1, 2014 but refused to admit receipt, it arguably acted in bad faith. The Court here considers only Selective's legal argument that an additional insured lacks standing to bring a bad faith claim under South Carolina law.

The Court finds no genuine dispute that UFP is an "additional insured" and not a "named insured" under the relevant insurance agreement. (*See* Dkt. No. 64-7 at 22–24.) Under South Carolina law, a tort action for an insurer's bad faith refusal to pay benefits does not extend to third parties who are not named insureds. *Kleckley v. Nw. Nat. Cas. Co.*, 526 S.E.2d 218, 219 (S.C. 2000). Although UFP is not a named insured, it also is not a "third party"—it is an "additional insured" under the policy. UFP does not sue to recover for a bad faith refusal to pay first-party benefits; rather, UFP sues to recover benefits allegedly due UFP as an insured under the insurance contract.

The South Carolina Court of Appeals addressed an additional insured's bad faith claim in *BMW of N. Am., LLC v. Complete Auto Recon Services, Inc.*, 731 S.E.2d 902, 907 (S.C. Ct. App. 2012). The Court of Appeals held that defendant Colony Insurance Company was entitled to summary judgment on the bad faith claim brought by BMW, an additional insured under a policy issued by defendant, because the subject matter of the claim was not covered by the insurance agreement. There is no suggestion that BMW lacked standing to bring a bad faith claim against Colony Insurance at all. Further, this Court can discern no apparent reason why a party identified as an insured in the insurance contract should not be able to bring a bad faith claim regarding the handling of its claim for insurance benefits brought under the insurance contract. The many cases Selective cites to support its position are inapposite because they concern claims by third-party tort victims suing tortfeasors' liability providers for coverage of underlying tort claims, not additional-insured tortfeasors suing their own insurers for breach of contract.

The Court therefore finds that a genuine dispute exists about whether Selective handled UFP's claim in good faith.

### B.     Plaintiff's motion for summary judgment

UFP moves for summary judgment on its first cause of action. (Dkt. No. 65.) UFP concedes that a genuine dispute of material fact exists about tender dates (Dkt. No. 72 at 2 ("A clear factual dispute exists as to whether Selective received the October 1, 2014 tender.")), although UFP states a paragraph later, "the evidence clearly shows there is no doubt that there is no doubt that Selective received the tender of defense and indemnity from UFP on October 1, 2014" (Dkt. No. 72 at 3). For the reasons described above, the Court agrees that there is a factual dispute about the date of tender.

UFP characterizes that dispute as a damages dispute where liability is undisputed (Dkt. No. 74 at 2.) UFP makes the same argument about indemnity. (Dkt. No. 72 at 4.) Selective, however, asserts that it did not breach its duty to defend UFP if the tender date is April 29, 2015, and UFP makes no substantial argument to the contrary. (*See* Dkt. No. 64-1 at 6.) The tender date dispute therefore goes to liability, not just damages. Further, damages are an essential element of UFP's cause of action for breach of contract. *See Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) ("The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach."). UFP is not entitled to summary judgment on its breach of contract claim if there is a genuine dispute about whether UFP suffered any damages recoverable from Selective. For the reasons described above, genuine factual dispute exist about whether Selective satisfied its duty to defend UFP from the appropriate tender date, and whether UFP can prove any indemnifiable damages at all. The Court therefore denies Plaintiff's motion for partial summary judgment.

### IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment (Dkt. No. 64) and **DENIES** Plaintiff's motion for summary judgment (Dkt. No. 65).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

February ___, 2017
Charleston, South Carolina